No. 31,012.

Josie Baumgarten, *Appellee*, v. Herman Baumgarten, *Appellant*.

(19 P. 2d 445.)

Opinion filed March 11, 1933.

*Leon W. Lundblade,* of Beloit, for the appellant.

*Charles G. Dockhorn* and *Forrest J. Horton,* both of Goodland, for the appellee.

The opinion of the court was delivered by

Thiele, J.: On April 17, 1930, the above action was tried in the lower court, and at the conclusion of the trial the judge rendered judgment evidenced by his minutes, which are as follows:

"April 17, 1930. Judgment for plaintiff for divorce on the grounds set forth in the petition. Divorce to become absolute after six months. All of lots 13-14-15, block 80, orig. town of Goodland, Kansas, awarded to plaintiff as her absolute property, free from any claim of the defendant. Plaintiff to pay all taxes now due thereon. Defendant awarded all other property, in name of or owned by the defendant, awarded to him. Defendant adjudged to pay the mortgage due the Goodland Building and Loan Association, plaintiff to pay the amount received by government for her ward, Hugh Dean Irelan. Cost of this action to be paid from deposit in custody of clerk. Motion for new trial by defendant."

The form of the journal entry was not settled and signed by the trial judge and filed until March 31, 1932, and in so far as the questions involved in this appeal are concerned, contains the following recitals:

"It is further ordered, considered, adjudged and decreed that the defend-

ant, Herman Baumgarten, is to pay the mortgages upon said real estate that exist at this time payable to the Goodland Building and Loan Association of Goodland, Kansas, leaving said real estate set apart to the plaintiff, Josie Baumgarten, and described as lots thirteen (13), fourteen (14), and fifteen (15), in block eighty (80), in the original town of Goodland, Sherman county, Kansas, free and clear of any encumbrance, and that of this amount $5,125.68 exists as against the last-described property, set over to and apart for the plaintiff. This amount is ordered and adjudged to be paid by the defendant to cause her property to be free and clear of encumbrances.

"It is further ordered, adjudged and decreed that the plaintiff, Josie Baumgarten, shall have as her own real property, free and clear of any encumbrances and of any right, title, interest or lien of this defendant all of said lots, thirteen, (13), fourteen, (14), and fifteen, (15), in block eighty, (80), in the original town of Goodland, Sherman county, Kansas."

On April 9, 1932, plaintiff filed her præcipe for an execution and on the same day an execution was issued against the property of the defendant, the recital of the writ being that—

"Josie Baumgarten on the 17th day of April, 1930, in an action then pending in the district court of Sherman county, in the state of Kansas, recovered judgment against Herman Baumgarten for the sum of Fifty-one Hundred Twenty-five & 68/100 Dollars," etc.

On April 13, 1932, an affidavit in garnishment was filed and a garnishment issued. On May 3, 1932, defendant filed his motion for an order restraining the clerk of the district court from issuing execution, and his motion for an order dissolving, quashing and holding for naught the garnishment, the grounds of both motions being that there is no valid judgment upon which the same could be issued; that the purported judgment was entered in the absence of defendant and his counsel, and without notice as provided by law and the rules of this court; that the journal entry as filed does not set out the actual judgment rendered April 17, 1930, but constitutes a modification and change of said judgment; and that the court had no jurisdiction over either the subject matter or the judgment, since one term had passed and the period of six months had elapsed since the rendition of the judgment on April 17, 1930. On May 13, 1932, another affidavit in garnishment was filed and a similar motion was directed against it. All of said motions were denied, and from these rulings the defendant appeals.

The journal entry complained of was not promptly prepared, settled and filed as required by rules 32 and 33 of this court. Possibly this is due in part to the fact that the defendant appellant changed counsel. Prior to March 12, 1932, plaintiff's counsel pre-

pared a journal entry and submitted it to opposing counsel, who wrote a letter setting out some objections to parts of the entry not material here, and concluding:

"You might have Judge Ham write us if that journal entry meets with his remembrance of what he ordered; and, if he will write us to that effect, our objection, of course, would have no effect."

While most of the brief is taken up with a discussion of whether the journal entry as signed and filed expresses a modified and different judgment from that rendered by the court, and of whether it was a *nunc pro tunc* entry or not, an examination of the journal entry as filed and of the trial judge's minutes shows that in so far as the question at issue is concerned, there is no change or modification further than that the journal entry specifically states the amount of the mortgage referred to in the judge's notes.

When the motions complained of were argued, the trial judge said:

"After hearing all the evidence the court reached the conclusion that while probably the property, the real estate, lots 13, 14 and 15, block 80, original townsite of Goodland, clear, would not be of the value equal to the other property encumbered, yet that it would be better for both parties that this property be adjudged to be cleared by the defendant except for the taxes against it, and that the property be adjudged the property of the defendant without any obligation on the part of the plaintiff to help pay the mortgage indebtedness of the various mortgage liens.

"It was clearly the intention of the court to render the same judgment that is expressed in the journal entry. This court has no recollection that there were any figures made showing the exact amount that half the obligations would reach, or that that sum of $5,125 and some cents was reached, in the evidence, the evidence being as to the whole indebtedness, as to what it covered."

The controlling question is whether such a judgment was rendered that execution and garnishment could be had thereon. An examination of the judge's minutes of April 17, 1930, and of the journal entry filed March 31, 1932, fails to disclose any judgment in favor of plaintiff and against the defendant for the sum of $5,-125.68, or any other amount. It is ordered that the defendant pay the mortgages to the Goodland Building and Loan Association, leaving the real estate set apart to the plaintiff free and clear of any encumbrance, and that $5,125.68 exists as against the real estate set apart to plaintiff. The journal entry recites:

"This amount is ordered and adjudged to be paid by the defendant to cause her property to be free and clear of encumbrances."

Had it been intended that the plaintiff have judgment against the defendant for any sum of money whatever, or had it been intended that if defendant did not pay the mortgage indebtedness she should then have judgment, words appropriate could easily have been used, and not having been so used, under ordinary rules of interpretation it must be held that no personal judgment was intended. There being no personal judgment in favor of plaintiff and against defendant, there is no basis either for the issuance of an execution against the property of the defendant under R. S. 60-3403 or for garnishment after execution either under R. S. 60-3491 or R. S. 60-34,107. While the facts in the case are not the same, the language used in *Scott v. Scott*, 80 Kan. 489, 490, 103 Pac. 1005, is applicable here:

"The court is thus given absolute control of the matter. It may, within reasonable limits, dispose of the husband's property as it sees fit. It may take from him anything he has and give it to the wife. And this necessarily implies that it may create a lien for her benefit upon any real estate he possesses. (*Blankenship v. Blankenship*, 19 Kan. 159.) Obviously it also has the power to free any particular tract from all lien, so as to enable the husband to pass a title clear of any claim on the part of the wife. Probably by the use of language indicating such purpose it may give its decree awarding a fixed sum as alimony, the precise effect of an ordinary money judgment, collectible by execution and operating as a lien on the husband's real estate. But the question of present moment is, What was the intention of the court in this case? Where alimony is ordered to be paid in installments, and nothing is said as to the manner of its collection, we think the fair inference is that the court intends the order to be enforced, not by lien and execution—a remedy manifestly ill adapted to the purpose, but by attachment for contempt if payment is not made—a remedy always available (14 Cyc. 799) and ordinarily efficacious."

The orders of the court denying the appellant's motion to restrain the issuance of execution and motions to dissolve garnishment proceedings are reversed and the cause is remanded with instructions to allow the motions.